UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN ALBERTS, | ) |
| Petitioner, | ) |
| | ) No. 3:20-cv-00408 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| GRADY PERRY, | ) |
| Respondent. | ) |

## **MEMORANDUM OPINION**

John Alberts, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") challenging his convictions and sentence for rape of a child less than 13 years of age. (Doc. No. 1.) The Respondent, Warden Grady Perry, filed an answer to the Petition (Doc. No. 9, "Answer"), and Petitioner filed a reply (Doc. No. 21). The Petition is ripe for review, and this court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the Court finds that an evidentiary hearing is not needed and that Petitioner is not entitled to habeas relief. The Petition will be denied and this action will be dismissed.

### **I. PROCEDURAL HISTORY AND EVIDENCE AT TRIAL**

On March 10, 2008, a Williamson County, Tennessee grand jury returned an indictment charging Petitioner with eight counts of rape of a child, one count of solicitation of sexual exploitation of a minor, and one count of solicitation of a minor to commit rape of a child. (Doc. No. 8-1 at 4-7); *State v. Alberts*, No. M2015-00248-CCA-R3-CD, 2016 WL 349913, at *1 (Tenn. Crim. App. Jan. 28, 2016) (hereinafter "*Alberts II*"). The trial court subsequently severed, from the other six counts (which were themselves severed into three different trials), the four counts of

rape of a child (Counts 1-4) concerning six-year-old victim H.N. *Alberts II*, 2016 WL 349913, at *1. The case proceeded to trial on those four counts.

After severance but prior to trial, Petitioner moved to suppress evidence obtained from a laptop computer seized from his car during the execution of a search warrant, on the ground that the search warrant was defective. *Alberts II*, 2016 WL 349913, at *1. The trial court granted the motion on May 25, 2010. *Id*. On interlocutory appeal, the Tennessee Court of Criminal Appeals ("TCCA") remanded for further proceedings to determine whether one of the exceptions to the warrant requirement applied. *State v. Alberts*, 354 S.W.3d 320, 323 (Tenn. Crim. App. 2011). On remand, the trial court found that the automobile exception to the warrant requirement applied and therefore denied the motion to suppress. *Alberts II*, 2016 WL 349913, at *4.

On June 5, 2013, Petitioner's trial commenced. *Alberts II*, 20156 WL 349913, at *4. The bulk of the direct evidence against Petitioner consisted of graphic images retrieved by the Tennessee Bureau of Investigation ("TBI") from the laptop computer. *Id*. A.S., a woman who grew up "as brother and sister" with Petitioner, and with whom Petitioner previously lived as an adult, testified that the girl in the images with Petitioner was H.N., the daughter of the girlfriend of Petitioner's brother. (Doc. No. 8-16 at 57-59, 69-70); *Alberts II*, 20156 WL 349913, at *4. A.S. also testified that the images were taken at the home she had shared with Petitioner, which H.N. had visited. (Doc. No. 8-16 at 63-65); *Alberts II*, 20156 WL 349913, at *4. K.N., H.N.'s mother, testified that H.N. was six years old at the time of Petitioner's alleged acts. (Doc. No. 8-16 at 77-78.)

The State also offered the testimony of Williamson County Sheriff's Office Detective Tameka Sanders and TBI Assistant Special Agent in Charge James Patterson. Together, Sanders and Patterson testified about the retrieval of the images; the content of the images (including oral

sex and vaginal penetration), the identification of Petitioner and H.N. as being the persons in the images, and other physical evidence gathered by law enforcement based on the images (e.g., camera, bed linens, and undergarments). (*See* Doc. Nos. 8-15, 8-16.) The State also introduced, through Sanders, a series of jailhouse letters written by Petitioner to his mother and brother, in which Petitioner confessed to leaving the photographs of himself and H.N. on the computer and asserted that H.N. encouraged and was a willing participant in the activities depicted therein. (Doc. No. 8-15 at 124-32.)

On June 7, 2013, the jury found Petitioner guilty on all four counts of rape of a child. *Alberts II*, 20156 WL 349913, at *4. The trial court thereafter denied Petitioner's motion for a new trial. (Doc. No. 8-12 at 110-19). On April 8, 2014, the court sentenced Petitioner to four consecutive 25-year terms of imprisonment to be served at 100%. (Doc. No. 8-11 at 119-122); *Alberts II*, 2016 WL 349913, at *4. Thus, Petitioner received a total effective sentence of 100 years of imprisonment. On January 28, 2016, the TCCA affirmed. *Alberts II*, 2016 WL 349913, at *4-8. On June 23, 2016, the Tennessee Supreme Court denied discretionary review. (Doc. No. 8-31.)

On May 3, 2017, Petitioner filed a pro se petition for state post-conviction relief. (Doc. No. 8-32 at 36-39.) The post-conviction court appointed counsel, who filed an amended petition. (*Id*. at 48-55.) On April 19, 2018, after holding an evidentiary hearing (Doc. Nos. 8-33, 8-34), the state post-conviction court denied relief. (Doc. No. 8-32 at 78-92.) On September 16, 2019, the TCCA affirmed. *Alberts v. State*, No. M2018-00994-CCA-R3-PC, 2019 WL 4415189, at *4-6 (Tenn. Crim. App. Sept. 16, 2019) (hereinafter "*Alberts III*"). On January 15, 2020, the Tennessee Supreme Court denied discretionary review. (Doc. No. 8-43.)

On May 8, 2020, Petitioner timely submitted the pending Petition. (Doc. No. 1.)

## II. STANDARD OF REVIEW

1. <u>Habeas Relief</u>

The authority for federal courts to grant habeas corpus relief to state prisoners is provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a). The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). Under AEDPA, state courts are generally considered "adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), and "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A federal court may not grant relief unless a petitioner establishes that the state court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the

. . . [principle] to the facts of a prisoner's case." *Williams*, 529 U.S. at 409; *Hill*, 792 F.3d at 676. And for an unreasonable determination of the facts to occur, a federal court must find that a "state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). The Sixth Circuit presumes that a state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El*, 537 U.S. at 340).

2. Exhaustion and Procedural Default

Before a federal court may review the merits of a claim brought under Section 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

The exhaustion requirement works together with the procedural-default doctrine, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan*, 526 U.S. at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule (or set of rules) have closed off any remaining state court avenue(s) that might otherwise exist for review of the claim on the merits. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–

84 (6th Cir. 2012)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

To overcome a procedural default, a petitioner may show "good cause for the default and actual prejudice from the claimed error." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (citing *Coleman*, 501 U.S. at 754). A petitioner may establish cause by "show[ing] that some objective factor external to the defense" —a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). Objective impediments include an unavailable claim or interference by officials that made compliance with the rule impracticable. *Id*. Attorney error does not constitute cause unless it entails constitutionally ineffective assistance of counsel. *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08. Generally, however, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.[1] *Murray*, 477 U.S. at 489.

Ineffective assistance of post-conviction counsel may establish cause under two circumstances. First, the complete abandonment (of the representation) by counsel during state post-conviction proceedings without notice to the petitioner may establish cause to excuse default. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, ineffective assistance of post-conviction counsel may establish the cause needed to excuse procedural default regarding substantial claims

---

[1] If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective-assistance claim. *Edwards*, 529 U.S. at 452-53.

of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *see also Sutton*, 745 F.3d at 792 (holding that *Martinez* and *Trevino* apply in Tennessee).

If cause is established, a petitioner must also demonstrate actual prejudice. To do so, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means that "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (citations omitted); *Frady*, 465 U.S. at 170. In the alternative, because cause and prejudice is not a perfect safeguard against fundamental miscarriages of justice, a court may overlook these requirements if a petitioner presents an "extraordinary case" whereby a constitutional violation "probably resulted" in the conviction of someone who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Benton*, 942 F.3d at 307.

### III. ANALYSIS

Petitioner asserts one claim of constitutionally ineffective assistance of counsel. He contends that trial counsel failed to move to suppress the evidence seized from the laptop computer in his car on the specific basis that the automobile exception to the warrant requirement does not apply to a car that is "parked and locked" on the "protected curtilage" of a home – i.e., "on the private residential driveway within a few feet of the home." (Doc. No. 1 at 4-6 (citing *Florida v. Jardines*, 569 U.S. 1 (2013)); 21 at 5-12 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 453-54 (1971)). Petitioner apparently contends that he raised this claim in state court, inasmuch as the

Petition states that "[a]ll grounds in this petition have been raised in state court." (Doc. No. 1 at 7.) Likewise, Respondent apparently contends that Petitioner exhausted this claim before the state courts, inasmuch as the Answer states that the Petition raises "the same claim" that was asserted in Petitioner's state post-conviction proceedings, and Respondent urges dismissal because the state courts' resolution (denial) of the claim was correct. (Doc. No. 9 at 10-12.)

However, Petitioner did not argue in state court that trial counsel was constitutionally ineffective for failing to make a "protected curtilage" argument in connection with the motion to suppress. In the state post-conviction petition and on his post-conviction appeal to the TCCA, Petitioner argued instead that trial counsel was ineffective for failing to move to suppress the computer evidence separately on the ground that a search pursuant to the automobile exception did not properly encompass a laptop computer as a "container" within the car. (*See* Doc. No. 8-37 at 8-10 (arguing trial counsel failed to move to suppress on ground that "the vehicle exception to the warrant requirement would not have legally justified the search and forensic examination of the laptop computer")); *Alberts III*, 2019 WL 4415189, at *6 (considering whether the automobile exception permitted the search of the computer as a "container" found inside a car that was "capable of concealing the object of the search"). Indeed, the nature of Petitioner's claim on state post-conviction proceedings is evident in the TCCA's ruling. The TCCA held that trial counsel was not ineffective for failing to file a motion to suppress based on the "container" argument, because that argument would have failed under existing law. *See Alberts III*, 2019 WL 4415189, at *4-6 (citing *United States v. Ross*, 456 U.S. 798 (1982); *California v. Acevedo*, 500 U.S. 565 (1991)). The TCCA also concluded that trial counsel was not ineffective for failing to argue that a

warrantless search of the computer was improper under *Riley v. California*, 573 U.S. 373 (2014), which was decided only after Petitioner's trial.[2] *Id.* at *6.

The claim Petitioner advances here concerns not the *scope* of the search of his car pursuant to the automobile exception, but an alternative ground to *wholly preclude* application of the automobile exception to justify the search of his car.[3] That is, Petitioner here claims that his trial counsel should have asserted that the automobile exception was inapplicable in this case because Petitioner's car was locked and within the curtilage of his home; in state post-conviction proceedings Petitioner argued that trial counsel should have asserted (via a separate motion to suppress) that the automobile exception (even if applicable) was not broad enough justify the search of the computer. Accordingly, Petitioner did not, as required, present a "protected curtilage" claim to the state courts in the first instance. *See id.* at *4-6. Because a state procedural rule

---

[2] In *Riley*, the Supreme Court held that law enforcement officers must secure a warrant before conducting a search of a cell phone, even if the warrantless search was conducted incident to a lawful arrest. *See Riley*, 573 U.S. at 386. In so doing, the Supreme Court noted that it was actually treating so-called "cell phones" as multi-functional "minicomputers" with substantial electronic storage capacity. *Id.* at 394. For this reason, *Riley* arguably is applicable to computers generally. But *Riley's* applicability to computers generally is disputed. *Starner v. Jenkins*, No. 3:15CV1841, 2016 WL 11384514, at *7 (N.D. Ohio May 31, 2016) (finding *Riley* inapplicable in part because the petitioner did "not allege that the police searched his cell phone; he concedes that the police searched his personal computers"), *report and recommendation adopted*, No. 15-CV-1841, 2016 WL 4135999 (N.D. Ohio Aug. 4, 2016) (Either way, it may already have been well understood, prior to *Riley*, that a warrantless search of a computers *other than a cell phone* generally could not be justified under the search-incident-to-lawful-arrest exception to the warrant requirement).

Notably, *Riley* did not involve the automobile exception; the warrantless search held unconstitutional in *Riley* was purportedly justified not by the automobile exception to the warrant requirement, but rather by the search-incident-to-lawful-arrest exception to the warrant requirement. *E.g.*, *id.* at 385-86. *Riley* held that a warrantless search of a cell phone is never justified by the search-incident-to-lawful-arrest exception to the warrant requirement, but it expressly held open the possibility that other exceptions to the warrant requirement could justify the warrantless search of a particular cell phone. *See id.* at 401-02.

[3] Respondent entirely misapprehends Petitioner's instant claim. In particular Respondent fails to grasp that Petitioner is now asserting *a new particular basis* to suppress the fruits of the search of the computer that (according to Petitioner) should have, but did not, prompt trial counsel to move separately to suppress those fruits. Accordingly, Respondent's legal analysis is of little assistance to the Court.

prohibits the state courts from considering this claim now, *Hall*, 795 F. App'x at 944, the claim is deemed exhausted (since there is no longer an "available" state remedy) but procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 752-53; *Atkins*, 792 F.3d at 657. Thus, federal habeas review of this claim is barred unless the petitioner can demonstrate that cause and prejudice excuses the procedural default or that failure to consider the claims would result in a fundamental miscarriage of justice. *Benton*, 942 F.3d at 307; *Dretke*, 541 U.S. at 392.

Petitioner suggests that the default should be excused because he generally raised the Sixth Amendment and ineffective assistance of counsel in connection with the motion to suppress before the TCCA.[4] (*See* Doc. No. 21 at 6.) However, a petitioner does not exhaust his remedies for all ineffective assistance of counsel claims if the state courts are presented with only one aspect of counsel's performance. *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted) ("To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts."). Petitioner offers no other reason to excuse his procedural default, and the Court can discern none.

Although "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," *Martinez*, 566 U.S. at 9, "federal courts are not required to address procedural default before deciding against a petitioner on the merits" of a habeas claim. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) ("Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner" over more complicated procedural-bar issues)); *see also* 28 U.S.C.

---

[4] Petitioner addresses his own procedural default despite Respondent's failure to raise it.

§ 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Overton v. MaCauley*, 822 F. App'x 341, 346 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Kataja v. Nessel*, 775 F. App'x 194, 201 (6th Cir. 2019) (noting that when "habeas claims fail on the merits, the court . . . need not determine whether they are procedurally defaulted").

Accordingly, in cases in which the merits of a claim are more straightforward than the procedural-default analysis, a reviewing court may bypass the *Martinez* framework and "proceed directly to the merits" of a defaulted claim. *Hudson*, 351 F.3d at 216. This is such a case. Here, the Court need not resolve whether Petitioner has established cause under *Martinez* to excuse the procedural default of his claim because, in any event, the claim fails on the merits.

1. <u>Legal Standard for Ineffective Assistance of Counsel</u>

The Sixth Amendment to the United States Constitution guarantees the right of a person accused of a crime to the effective assistance of counsel. *Strickland*, 466 U.S. at 686 (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of constitutionally ineffective assistance of counsel, the petitioner must show (1) deficient performance of counsel and (2) prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011); *Bell v. Cone*, 535 U.S. 685, 694-95 (2002); *Strickland*, 466 U.S. at 687.

Regarding the performance element, "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, because reasonable attorneys may disagree on the most appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Courts must therefore apply a "strong presumption" that a lawyer's conduct in discharging his duties "falls within the wide range of reasonable professional assistance." *Id*. at 570 (quoting

*Strickland*, 466 U.S. at 689); *Harrington*, 562 U.S. at 104. To establish that trial counsel's performance is constitutionally deficient, a petitioner must show that it falls below an objective standard of reasonableness, *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019) (citing *Strickland*, 466 U.S. at 686-87), as measured by "prevailing professional norms." *Bigelow*, 367 F.3d at 570 (quoting *Strickland*, 466 U.S. at 687-88). A court must judge the reasonableness of counsel's challenged conduct on the totality of evidence of a particular case viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 695.

The prejudice element requires a petitioner to show that there is a "reasonable probability" that the outcome would have been different but for counsel's unprofessional errors. *Bigelow*, 367 F.3d at 570 (quoting *Strickland*, 466 U.S. at 694); *Premo*, 562 U.S. at 122. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "while the petitioner need not conclusively demonstrate his 'actual innocence,' the focus should be on whether the result of the trial was 'fundamentally unfair or unreliable,'" *Bigelow*, 367 F.3d at 570 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)), or "infect[ed] . . . with error of constitutional dimensions."[5] *Richardson*, 941 F.3d at 856 (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)).

2. Application

Petitioner is unable to establish either element of constitutionally ineffective assistance of counsel. First, Petitioner cannot demonstrate deficient performance. At the post-conviction hearing, trial counsel explained that he chose to focus the motion to suppress on the "multiple things wrong with th[e] search warrant" and supporting affidavit. (*See* Doc. No. 8-34 at 8-30.)

---

[5] The Court realizes that the final articulation in this sequence—asking whether the error is "of constitutional dimension—is circular (or tautological). Under that articulation, an error amounts to a constitutional violation only if it is an error "of constitutional dimension." This proposition is true as far as it goes, but it is not helpful because it merely restates the question it is designed to answer.

Nevertheless, trial counsel believed that he had preserved the issue of the validity of the search of the computer as a container, which was permitted under then-existing caselaw, for appeal. *See Alberts*, 2019 WL 4415189, at *4. Later, when representing Petitioner on appeal, trial counsel added an argument based on the new *Riley* decision. *Id.*

The Court must presume that trial counsel's decision to focus the motion to suppress on the deficiencies in the warrant might have been a sound strategic decision that is "virtually unchallengeable" on habeas review. *Strickland*, 466 U.S. at 689-90; *Dixon*, 737 F.3d at 1012. In particular, the decision of which among possible arguments to make is ordinarily entrusted to counsel's professional judgment. Indeed, such strategic decisions are generally applauded by the courts—at least where they reflect prioritizing the argument(s) counsel believes are the strongest. *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (explaining that the process of "winnowing out weaker arguments" is "far from being evidence of incompetence").

Furthermore, because the adequacy of counsel's performance is based on "counsel's perspective at the time," *Strickland*, 466 U.S. at 689, rather than "in the harsh light of hindsight," *Bell*, 535 U.S. at 702, subsequent legal developments are relevant only if those developments were "*clearly* foreshadowed by existing decisions," *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) (quoting *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir.1999)) (emphasis added). Outside of this narrow exception, "counsel is not ineffective for failing to predict the development of the law." *Id.* (citing *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001) (holding that counsel was not ineffective for failing to make a particular argument because "we cannot conclude that . . . counsel should have reasonably anticipated" the change in the law even though there were conflicting opinions in the state courts on the issue)); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (explaining that "nonegregious errors such as failure to perceive or anticipate a

change in the law . . . generally cannot be considered ineffective assistance of counsel"); *Dado v. United States*, No. 17-2013, 2018 WL 1100279, at *2 (6th Cir. Feb. 15, 2018) (observing that counsel is not required to predict new developments in substantive law); *Hopkins v. United States*, No. 17-1599, 2017 WL 9477084, at *2 (6th Cir. Nov. 27, 2017) (noting that trial counsel has no "general duty" to anticipate a change of law announced by the Supreme Court).

The validity of the alternate argument that Petitioner now suggests—that is, that his car was not subject to search under the automobile exception, because it was locked and parked on the home's curtilage – was not readily apparent at the time of trial. Three months before Petitioner's trial, in March 2013, the United States Supreme Court clarified that the curtilage is considered part of the home for Fourth Amendment purposes, and explained that, as a general matter, an intrusion by law enforcement onto the curtilage to gather evidence is "a search within the meaning of the Fourth Amendment" that is presumptively unreasonable without a warrant. *Florida v. Jardines*, 569 U.S. 1, 6-11 (2013). At that time, the Court defined "curtilage" as the area "immediately surrounding and associated with the home . . . intimately linked to the home, both physically and psychologically . . . where privacy expectations are most heightened," such as a "front porch." *Id*. at 6-7. However, it was not until *2018* that the Supreme Court expanded the scope of Fourth Amendment protections to reach, under certain circumstances, cars parked in the *driveway* of a home. In *Collins v. Virginia*, the Court held, for the first time, that a driveway may be considered part of a home's curtilage for Fourth Amendment purposes. 138 S. Ct. 1663, 1670-71 (2018). The Court also held, for the first time, that a vehicle parked on the curtilage of a home is not subject to warrantless search pursuant to the automobile exception.[6] *Id*. at 1671-72.

---

[6] As noted, below, the Supreme Court explained that in this context, a vehicle is within the curtilage of the home if it is on an enclosed driveway abutting the house.

The developments set forth in *Collins* were not "clearly foreshadowed" at the time of Petitioner's trial. *See, e.g.*, *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011) (concluding that police did *not* intrude upon curtilage by entering a driveway adjacent to a home that was not enclosed by any barrier where cars were parked near a public sidewalk); *United States v. Estes*, 343 F. App'x 97, 101 (6th Cir. 2009) (concluding driveway was *not* curtilage because it was not enclosed, the defendant had not taken any steps to protect it from observation by passersby, and it was used as a point of entry to the defendant's residence); *see also United States v. May-Shaw*, 955 F.3d 563 (6th Cir. 2020) (rejecting argument that prior Sixth Circuit caselaw had established "a broad rule that a carport is always within the curtilage of a home" and noting that "[e]very curtilage determination is distinctive and stands or falls on its own unique set of facts") (quoting *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir. 1998)); *Collins*, 138 S. Ct. at 1682 (Alito, J., dissenting) (concluding that the court's decision "use[d] the curtilage concept" in a new way and was a "substantial alteration" of Fourth Amendment law).

Petitioner cannot, therefore, rely on these eventually forthcoming legal developments to establish that trial counsel rendered constitutionally-deficient performance in connection with the motion to suppress litigated before his 2013 trial. *See, e.g.*, *Thompson v. Nagy*, No. 18-1747, 2018 WL 8731570, at *3 (6th Cir. Nov. 20, 2018) (holding counsel was not ineffective for failing to argue that a search of cell-site information violated the Fourth Amendment, because counsel did not yet have the benefit of the relevant legal developments in the Supreme Court's decision of *Carpenter v. United States*). Because Petitioner has offered no basis for the Court to deviate from the "strong presumption" that trial counsel's performance fell "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, he has not established deficient performance.

Petitioner also has not demonstrated prejudice. Assuming arguendo that trial counsel should have anticipated the legal developments in *Collins v. Virginia* and moved to suppress the images obtained from the laptop on that basis, Petitioner has not established that outcome of the motion to suppress would have been different. *Collins* did not establish a blanket rule barring the application of the automobile exception to all cars located in residential driveways. Rather, in *Collins* the Supreme Court "held that an *enclosed driveway abutting a house* constituted the curtilage of the home" for Fourth Amendment purposes, and the Court concluded that a car located *therein* could not be searched pursuant to the automobile exception. *See May-Shaw*, 933 F.3d at 569-70 (emphasis added) (citing *Collins*, 138 S. Ct. at 1670-71). Here, Petitioner does not allege that his car was parked in an "enclosed driveway abutting a home" similar to *Collins*. (*See* Doc. Nos. 1, 21.)

Nor does Petitioner allege other circumstances to suggest that Fourth Amendment protections might apply. As the Sixth Circuit has explained, where necessary the Court uses four factors as guideposts to determine whether a driveway area falls within a home's curtilage: (1) the proximity of the area to the home, (2) whether the area is within an enclosure around the home, (3) how that area is used, and (4) what the owner has done to protect the area from observation from passersby. *May-Shaw*, 955 F.3d at 563 (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987); *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 561 (6th Cir. 2018)). In the application of the *Dunn* factors, Petitioner bears the burden to establish that the challenged search violated his Fourth Amendment rights. *Id.* (citing *United States v. Coleman*, 923 F.3d 450, 455 (6th Cir. 2019); *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012)).

Here, Petitioner has made no allegations that address any of the *Dunn* factors aside from asserting that the driveway was within a few feet of the home. This alone is insufficient, however,

because the proximity factor "is not determinative 'without reference to the additional *Dunn* factors.'" *May-Shaw*, 955 F.3d at 571 (citing *Daughenbaugh*, 150 F.3d at 599). Furthermore, the record belies the suggestion that the circumstances could satisfy the *Dunn* factors. Petitioner's neighbor, Timothy Pratt, testified at the motion to suppress hearing that Petitioner's car was located in the "middle" of a shared driveway between two adjoining properties such that it was readily accessible to Pratt, who held the keys. (*See* Doc. No. 8-2 at 46-59.) Accordingly, Petitioner has not established that the trial court would have determined the driveway in question was an area "to which the activity of home life extends . . . and so is properly considered curtilage" such that heightened Fourth Amendment protections extended to Petitioner's car. *Id*. at 570 (quoting *Collins*, 138 S. Ct. at 1671; *Jardines*, 569 U.S. at 7). Moreover, Petitioner is not entitled to an evidentiary hearing "on issues that can be resolved be reference to the state [c]ourt record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because Petitioner has not demonstrated a reasonable probability that the outcome of the motion to suppress would have been different had trial counsel made a "protected curtilage" argument, he has not established prejudice. *Strickland*, 466 U.S. at 694.

Accordingly, Petitioner is not entitled to habeas relief.[7]

---

[7] For the sake of completeness, Petitioner references *Riley v. California* in his reply in support of the instant habeas claim. (*See* Doc. No. 21 at 6-7.) While it is far from clear, to any extent that Petitioner may have belatedly intended to also raise the claim that he advanced before the state courts – i.e., that trial counsel should have moved to suppress on the ground that the search pursuant to the automobile exception did not extend to the contents of the laptop computer – the state courts' resolution of that claim was not contrary to, or an unreasonable application of, Supreme Court law. *Harrington,* 562 U.S. at 100. As discussed above, the Supreme Court did not decide *Riley v. California* – the case upon which the proposed motion is based – until after Petitioner's trial. It was, therefore, not unreasonable for the state courts to conclude that there was no foundation for a motion by trial counsel predicated on its rationale and that trial counsel did not act unreasonably by failing to predict future legal developments. *See Alberts*, 2019 WL 4415189, at *6.

## IV.  CONCLUSION

For the reasons set forth herein, Petitioner is not entitled to relief on his single habeas claim. Accordingly, the Petition under Section 2254 will be denied, and this action will be dismissed with prejudice. Because jurists of reason could not disagree with the Court's resolution of Petitioner's claims, the Court will deny a certificate of appealability.

An appropriate order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE